UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
ASHLAND

CIVIL ACTION NO. 0:15-cv-11-DLB-EBA

BILLY E. BARKER,                                                              PLAINTIFF,

v.                     **MAGISTRATE JUDGE'S
                       REPORT AND RECOMMENDATION**

DR. TIMOTHY LAW,                                                              DEFENDANT.

\* \* \* \* \* \* \* \* \* \*

On February 13, 2015, Billy E. Barker, a prisoner confined at the Kentucky State Reformatory in LaGrange, Kentucky, filed a *pro se* civil rights complaint, alleging that Dr. Timothy Law assaulted him by grabbing his wrist while Plaintiff was a pretrial detainee at Carter County Detention Center. [R. 1]. Barker moved to amend his complaint to include additional defendants, [R. 15], and though that motion was granted pursuant to Fed. R. Civ. P. 15(a)(1)(B), [R. 16], the Court later found that Barker's allegations did not establish that the newly-identified defendants were personally involved in the alleged assault, and dismissed the additional defendants, [R. 19], leaving Dr. Law as the sole remaining Defendant in this matter.

On July 27, 2016, Dr. Law filed a Motion for Summary Judgment, [R. 46], seeking to dismiss all claims against him. This matter has been referred to the undersigned to conduct all further proceedings, including preparing proposed findings of fact and recommendations on any dispositive motions. [R. 25]. For the reasons set forth below, the Court recommends that Defendant's motion for summary judgment be GRANTED.

**FACTUAL SUMMARY**

The following facts are undisputed. Dr. Timothy Law, an osteopathic physician, was the Medical Director for Carter County Detention Center from February 15, 2012 to April 18, 2014,

1

pursuant to a contract with CorrectHealth Kentucky, LLC, which provides medical services to the detention center's inmates. [R. 46-2]. In 2014, Billy Barker was a pretrial detainee at Carter County Detention Center. [R. 46-4].

Prior to February 1, 2014, Plaintiff had been examined by Dr. Law on multiple occasions while incarcerated at Carter County Detention Center, either in person or via video examination (where a nurse would be physically present with Plaintiff while Dr. Law administered the examination through video). [R. 46-6]. According to his medical records, Plaintiff complained of chest pains on January 21, 2014, and was given nitroglycerin tablets, which did not provide relief. [R. 46-7]. After nursing staff consulted with Dr. Law, Plaintiff was transferred to King's Daughters Medical Center on Dr. Law's recommendation, for further analysis of his chest pains. [R. 46-7]. Plaintiff and Dr. Law have each verified that Plaintiff's KDMC medical records, and the description of these events, are accurate. [Id.]; [R. 46-2].

KDMC's medical records indicate that Plaintiff had a series of tests and examinations performed regarding his chest pains, including an EKG and chemical stress test, both of which produced normal results. [R. 46-3]. Plaintiff consented to these treatments, and had no problems with being touched by KDMC staff during the treatment. [Rs. 46-7, 46-8]. The KDMC cardiologist's consulting report concluded that all tests were normal, that no further cardiac treatment was needed, and that a change of medication was warranted. [R. 46-3]. The emergency room physician discussed the consultation report with Plaintiff, and on January 28, 2014, Plaintiff was released back to Carter County Detention Center. [Rs. 46-8, 46-9].

On February 1, 2014, Dr. Law personally met with Plaintiff at the detention center to follow up on his recent hospitalization and discuss the KDMC medical records. [Rs. 46-2, 46-9]. During this conversation, Plaintiff became angry when Dr. Law informed him that his chest

2

pains were not heart-related.  During Plaintiff's deposition, Plaintiff acknowledged that Dr. Law had not stated or suggested Plaintiff was fabricating or "faking" his symptoms, [id.], but testified that he still became angry because he felt there was something in Dr. Law's tone of voice implying he was faking the chest pains.  [R. 46-9].

After Plaintiff became angry, Dr. Law told him to calm down, and touched him in an effort to help him relax, [R. 46-10], at which point Plaintiff began to rise to leave the examination.  Again, Dr. Law placed his hands on Plaintiff's wrist to calm him down.  [R. 46-2]. Though he realized Dr. Law wanted him to stay and complete the examination, Plaintiff ultimately left to return to his cell, and neither Dr. Law nor anyone else attempted to stop him. [R. 46-10].  At his deposition, Plaintiff testified that Dr. Law never punched or struck him, and stated that the only physical action Dr. Law used was the effort to grab Plaintiff's arm and push him back down into his seat.  [R. 46-10].  Plaintiff had no cuts, abrasions, or other injuries on his body from the touch, [id. at 10], and did not require nor request medical treatment at any time thereafter.  [Id.].  Plaintiff agreed he suffered no physical injury from Dr. Law's touching, and had no complaints about the adequacy of the medical treatment he received from Dr. Law or the Carter County Detention Center.  [R. 46-11].

## STANDARD OF REVIEW

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); Barr v. Lafon, 538 F.3d 554, 561 (6th Cir. 2008).  To prevail, "the non-movant must show sufficient evidence to create a genuine issue of material fact."  B.F. Goodrich v. U.S. Filter Corp., 245 F.3d 587, 592 (6th Cir. 2001); Celotex Corp. v. Catrett, 47 U.S. 317, 324 (1986).  A factual issue "is genuine if the evidence is such that a reasonable jury could return a

3

verdict for the non-moving party." Hendrick v. W. Reserve Care Sys., 355 F.3d 444, 451 (6th Cir. 2004) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).  Even though the moving party generally bears the burden to show that no genuine issue of material fact exists, "that burden may be discharged by showing . . . that there is an absence of evidence to support the nonmoving party's case." CenTra, Inc. v. Estrin, 538 F.3d 402, 412 (6th Cir. 2008) (internal citations omitted).

If the moving party meets its burden, the nonmoving party must then present "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).  It is insufficient that the nonmoving party rests on its pleadings; he must present some "specific facts showing that there is a genuine issue [of material fact] for a trial." Celotex, 477 U.S. at 324.  This means that "the existence of a mere scintilla of evidence in support of the non-moving party's position will not be sufficient; there must be evidence on which the jury could reasonably find for the non-moving party." Sutherland v. Mich. Dep't of Treasury, 344 F.3d 603, 613 (6th Cir. 2003) (citing Anderson, 477 U.S. at 251).

The nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Electrical Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586; 106 S. Ct. 1348, 89 L.Ed.2d 538 (1986); he must come forward with "significant probative evidence" in the record to support its complaint to show an issue of material fact. Moore v. Phillip Morris Cos., Inc., 8 F.3d 335, 340 (6th Cir. 1993); Jones v. Union Co., Tenn., 294 F.3d 417, 423 (6th Cir. 2002); Anderson v. Liberty Lobby, Inc., 477 U.S. at 249–50.

When deciding a motion for summary judgment, the court views factual evidence and draws all reasonable inferences in favor of the non-moving party. Matsushita, 475 U.S. at 587–88 (1986); Warf v. Bd. of Elections, 619 F.3d 553, 558 (6th Cir. 2010).  Ultimately, when

4

determining if summary judgment is appropriate, the Court must decide "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson, 477 U.S. at 251–52; Harrison v. Ash, 539 F.3d 510, 516 (6th Cir. 2008). If a plaintiff fails to otherwise prosecute his case, the action or claims brought against the defendant(s) may be dismissed, Fed. R. Civ. P. 41(b), and such dismissal acts an adjudication on the merits. See id.

## ANALYSIS

In this case, Plaintiff has failed to produce any evidence to show that the physical contact underlying Plaintiff's single allegation of force – that he was "assaulted by Dr. Timothy Law," when Dr. Law touched his arm in efforts to calm him down and encourage him to stay for the rest of the examination, [R. 1] – amounted to a constitutional violation. More specifically, he has failed to show how the contact was more than *de minimis* force, where it did not result in any physical injury, and has also failed to overcome Defendant's qualified immunity defense.

To begin, Defendant is entitled to qualified immunity. Any claim brought under 42 U.S.C. § 1983 alleges both that there was a deprivation of a right guaranteed to the plaintiff by the U.S. Constitution, and that the deprivation was caused by a person acting under color of state law. Wittstock vs. Mark A. Van Sile, Inc., 330 F.3d 899 (6th Cir. 2003). However, qualified immunity is an affirmative defense which shields public officials who perform discretionary functions from liability against § 1983 actions, so long as their conduct did not violate clearly then-established rights of which a reasonable official would have known. Qualified immunity protects state officials from the often ambiguous distinction between acceptable and excessive force, Saucier vs. Katz, 533 U.S. 194 (2001), and is designed to "avoid excessive disruption of government and permit the resolution of many insubstantial claims on summary judgment."

5

Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L.Ed.2d 396 (1982). Qualified immunity provides "ample protection to all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341 (1986).

The analysis of whether qualified immunity is available as a defense turns on the "objective legal reasonableness of the action, assessed in light of the legal rules that were clearly established at the time it was taken." Pearson v. Callahan, 555 U.S. 223, 244 (2009); Wilson v. Layne, 526 U.S. 603, 614 (1999) (internal quotations omitted). Once qualified immunity has been asserted, the burden of proof shifts to the plaintiff to show that the defendant is not entitled to qualified immunity. Armstrong v. City of Melvindale, 432 F.3d 695, 699 (6th Cir. 2006).

Dr. Law, who was contracted by CorrectHealth Kentucky, LLC, to provide medical services to Carter County Detention Center inmates, [R. 46-2], was clearly a state actor performing a discretionary function acting under color of state law. His motion raises the affirmative defense of qualified immunity based upon these facts, thereby shifting the burden of proof to Plaintiff to show that Dr. Law is not entitled to qualified immunity. Armstrong, 432 F.3d at 699. Plaintiff's response does not raise any arguments addressing Dr. Law's qualified immunity claim.

As explained above, qualified immunity depends on the "objective legal reasonableness of the action, assessed in light of the legal rules that were clearly established at the time it was taken," Pearson, 555 U.S. at 244; Wilson, 526 U.S. at 614 (internal quotations omitted). Under this standard, Dr. Law has provided enough evidence to show his conduct was objectively reasonable, "clearly not for a punitive purpose," "clearly undertaken in the furtherance of a legitimate state interest," and "violated no right guaranteed by the Constitution to the Plaintiff." [R. 46-1 at 12]. Plaintiff has not responded to these arguments, and has therefore not met his

6

burden. As a result, the Court finds Defendant is entitled to qualified immunity.

Importantly, even if the qualified immunity defense was unavailable to Dr. Law, Plaintiff's excessive force claim would still not create an issue of material fact to overcome the summary judgment motion. The Eighth Amendment is the primary source of protection for a convicted prisoner asserting a § 1983 excessive force claim. Watkins v. Evans, 96 F.3d 1449 (6th Cir. 1996). Pre-trial detainees such as Plaintiff are entitled to the same Eighth Amendment protections by way of the Fourteenth Amendment's Due Process Clause. Id.; see also Garretson v. City of Madison Heights, 407 F.3d 789, 795–96 (6th Cir. 2005). The core inquiry in an Eighth Amendment excessive force claim is not the extent of the injury, but rather, the "nature of the force—specifically, whether it was nontrivial and 'was applied . . . maliciously and sadistically to cause harm.'" Wilkins v. Gaddy, 130 S. Ct. 1175, 1179 (2010) (internal quotation omitted). The Sixth Circuit has adopted this approach. See, e.g., Shavers v. Bergh, No. 09-2475, 2011 WL 12473743, at *2 (6th Cir. July 15, 2011) (Sixth Circuit remanded where district court gave decisive weight to the extent of prisoner's injuries rather than the nature of the force used). To recover on an excessive force claim, the plaintiff must establish that the nature of the force used against him was "objectively unreasonable." Kingsley vs. Hendrickson, 135 S. Ct. 2466 (2015).

However, an excessive force claimant must show something more than *de minimis* force. See Hudson v. McMillian, 503 U.S. 1, 9–10 (1992); Bell v. Wolfish, 441 U.S. 520, 539 n.21 (1979); Leary v. Livingston Cty., 528 F.3d 438, 443 (6th Cir. 2008). The Eighth Amendment's prohibition of excessive force excludes from constitutional recognition *de minimis* uses of physical force, provided that the force used is not "repugnant to the conscience of mankind." Hudson, 503 U.S. 1; Whitley v. Albers, 475 U.S. 312 (1986); Wilkins, 130 S. Ct. 1175. Not every "malevolent touch" by a prison official gives rise to a federal cause of action. Hudson,

7

503 U.S. at 9, citing Johnson v. Glick, 481 F.2d 1028, 1033 (2d Cir. 1973) ("Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights." Id.).

Plaintiff has failed to show how Dr. Law's touching his arm was anything more than *de minimis* force. In his affidavit, Dr. Law states he touched Plaintiff's wrist to calm him down: "I patted his wrist in an effort to try to comfort and calm him but he became more agitated and left . . ." [R. 46-2 at 2]. Plaintiff admits he suffered no objectively verifiable physical injury from Dr. Law's touching his arm, and never sought medical attention afterwards. [R. 46-10]. In his response to the summary judgment motion, Plaintiff reiterates that he suffered no physical harm whatsoever, and expressly states that the alleged injury he suffered was psychological rather than physical; he states that "[t]his is a touching in the mind if not the body," that "[t]his assault is distinguished from battery," and that this is "essentially a mental rather than a physical invasion." [R. 50 at 1–2]. Plaintiff goes on to describe his alleged mental injury, stating his "mental disturbance include[s] fright[,] humiliation[,] and the like as well as any physical illness which has result[ed] from them," [id. at 2], though he never specifies what "physical illness" may have resulted. Plaintiff's reply further purports that he should still be able to recover for such an injury, because "[n]o actual contact is necessary." [Id. at 1].

Plaintiff's belief that "[n]o actual contact is necessary" to bring an Eighth Amendment excessive force claim, [R. 50 at 1], is incorrect. The Prison Litigation Reform Act, 42 U.S.C. § 1997e, precludes claims for mental or emotional injury without a prior showing of physical injury, and applies to constitutional claims as well as statutory claims. Id.; Robinson v. Corr. Corp. of Am., 14 F. App'x 382 (6th Cir. 2001). For example, in Corsetti v. Tessmer, the Sixth Circuit, citing to 42 U.S.C. § 1983 and 42 U.S.C. § 1997e, held that a prisoner's minor injuries,

8

including two small bruises or cuts on his shoulder that did not require medical attention, were *de minimis* and did not support his § 1983 claim for damages where he was statutorily required to show some physical injury in order to recover damages for mental or emotional injury. Corsetti v. Tessmer, 41 F. App'x 753 (6th Cir. 2002).

Here, Plaintiff did not suffer small bruises or cuts, and suffered no discernible injuries at all. During Plaintiff's deposition, he verified that Dr. Law did not physically hurt him in any way, but expressed he was offended by the contact, testifying that Dr. Law "didn't have no business putting his hands on me (sic)." [R. 46-10]. However, even though Plaintiff may have been offended by Dr. Law's contact, this alone does not create a legal cause of action. It is clear that no physical injury resulted from the contact, and under 42 U.S.C. § 1997e, Plaintiff is precluded from alleging a constitutional violation based upon his alleged mental or emotional injury, without first showing an underlying physical injury. Id.; Robinson, 14 F. App'x at 382.

Where the "absence of serious injury is relevant to, but does not end, the Eighth Amendment inquiry," Hudson, 503 U.S. at 2, this Court must still consider the "objective component" of the Eighth Amendment analysis – a contextual analysis of whether the alleged wrongdoing was objectively harmful enough to violate "contemporary standards of decency," Estelle v. Gamble, 429 U.S. 97, 103 (1976) – to fully determine whether a constitutional violation has been established. The evidence indicates Dr. Law's actions were objectively reasonable, and Plaintiff provides no evidence to the contrary. Dr. Law testified that he "patted [Plaintiff's] wrist . . . not to hurt or punish [him], or even to restrict him, but rather in an attempt to soothe and calm [him] as part of my treatment of him." [R. 46-2 at 2]. Plaintiff's testimony not only fails to create a question of fact regarding the innocuous nature of the contact, but in fact confirms that Dr. Law was merely trying to get him to relax. [R. 46-10]. This Court finds

that Plaintiff has created no question of fact as to how Dr. Law's touching Plaintiff's wrist was a "malevolent touch," Hudson, 503 U.S. at 9, or "repugnant to the conscience of mankind," id.; Whitley, 475 U.S. at 312, and accordingly, finds that the contact was objectively reasonable.

In short, Plaintiff is unable to show that a material issue of fact remains as to whether the physical contact by Dr. Law constituted a violation of Plaintiff's constitutional rights. Defendant has produced enough evidence to show he is entitled to judgment as a matter of law under Fed. R. Civ. P. 56, thereby requiring Plaintiff to come forward with "significant probative evidence" in the record to support his complaint and show an issue of material fact. Moore, 8 F.3d at 340; Jones, 294 F.3d at 423; Anderson, 477 U.S. at 249–50. Plaintiff has ultimately failed to do so; he has not shown how the contact was more than *de minimis* force, has admitted that no physical injury resulted, and has admitted that the alleged injury was purely psychological, which, as a matter of law, is insufficient in itself to bring a constitutional claim under 42 U.S.C. §§ 1997e and § 1983. This Court finds no genuine issues of material fact for a trial, Celotex, 477 U.S. at 324, and recommends that summary judgment be granted in favor of Dr. Timothy Law.

## RECOMMENDATION

Having considered the matter fully, and being otherwise sufficiently advised,

IT IS HEREIN RECOMMENDED that Defendant Dr. timothy Law's Motion for Summary Judgment, [R. 46], be GRANTED, that all claims against him be dismissed, and that this matter be stricken from the Court's active docket.

Signed January 25, 2017.



Signed By:
Edward B. Atkins  *EBA*
United States Magistrate Judge